FILED

2020 Jul-31  AM 10:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

PFE/CDM/DBL/EJC
GJ # 25 (August 2020)

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA JASPER DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. _____** |
| | ) | |
| **MICHELLE MARTINE JACKSON,** | ) | **18 U.S.C. §§ 2, 371, 1341,** |
| | ) | **1347, 1349** |
| | ) | **42 U.S.C. § 1320a-7b(b)(1)** |
| | ) | |
| **Defendant.** | ) | |

## INDICTMENT

The Grand Jury charges that:

At all times relevant to this Indictment:

## INTRODUCTION

### I.   DEFENDANT AND RELATED ENTITIES AND INDIVIDUALS

1.   Northside Pharmacy, LLC ("Northside") was an Alabama pharmacy located in Russellville, Alabama.

2.   Global Medical Equipment and Supplies, Inc. ("GMES") was an Alabama durable medical equipment company and pharmacy located in Haleyville, Alabama.

1

3.     In or about November 2014, Northside and GMES began operating together as Northside Pharmacy d/b/a Global Compounding Pharmacy ("Global"). Global described itself as "one of the top three largest compounding pharmacies in the United States."  Global employed sales representatives located throughout the United States, who generated prescriptions from doctors, physician assistants, nurse practitioners, and other licensed prescribers ("Prescribers").

4.     Global also operated and sought to operate through multiple other pharmacies, which included Carrollton Pharmacy d/b/a The Prescription Shop ("TPS"), located in Haleyville, Alabama.

5.     Bonita Amonett was an outside sales representative for Global and Global affiliated pharmacy TPS, and was based in Mobile, Alabama.  Global paid Amonett a base salary and varying commissions for each prescription she generated, including refills.

6.     Defendant **JACKSON** was a physician in Mobile, Alabama.  Amonett called on Defendant **JACKSON** on behalf of Global and received a commission from Global on prescriptions written by Defendant **JACKSON**.   Defendant **JACKSON** also operated a weight-loss clinic where Amonett worked without pay.

7.     Brandy Lunsford was a nurse practitioner who worked in the same office as Defendant **JACKSON** until in or about March 2015.  Lunsford was also a

co-owner of the weight-loss clinic with Defendant **JACKSON** until **JACKSON** bought out her interest in or about July 2015.  Amonett also called on Lunsford on behalf of Global and received a commission from Global on prescriptions written by Lunsford.

## II.    PHARMACEUTICAL SERVICES & BILLING

8.    Compounded drugs are a customized combination of medicines initiated and prescribed by a Prescriber such as a doctor, physician's assistant, or nurse practitioner, based upon the Prescriber-patient relationship and taking into consideration the particular patient's diagnoses, medical condition, individual health factors, and reaction to other medications.   A Prescriber typically issues a prescription for these medications after determining that commercially available medications are not as beneficial to the patient or may be inappropriate and/or harmful to the patient.  The ingredients of such compounded medication are mixed together by the compounder in the exact strength and dosage required by an individual patient.

9.    The U.S. Food and Drug Administration ("FDA") offers examples of when drugs would be compounded, including: **(a)** if a patient has an allergy and needs a medication to be made without a certain dye preservative; and **(b)** if an

elderly patient or child cannot swallow a pill and needs a medicine in a liquid form that is not otherwise available.

10.  Due to the unique and individualized nature of compounded medications, such medications are neither commercially available nor distributed in mass quantities.

11.  Because compounded pharmaceuticals are custom made to fit the unique needs of each patient, the FDA does not pre-approve compounded medications and therefore does not verify the safety or effectiveness of compounded drugs prior to dispensing.  In Alabama, the Alabama Board of Pharmacy regulates the practice of pharmacy, including pharmacy compounding.

12.  Manufactured drugs and pre-manufactured drugs are mass-produced for use by a large population of patients.  They are not compounded to meet the needs of a specific patient.  Manufactured drugs may include prescription topical products, pain patches, and pain sprays.

13.  Various entities, government and private, offer prescription drug benefits, including for compounded and manufactured drugs, as part of health insurance plans.  Individuals who have health coverage with health insurance plans are often referred to as beneficiaries.

4

14.     Health insurance plans include the following: **(a)** Blue Cross Blue Shield of Alabama ("BCBSAL"), a private plan providing drug insurance coverage in Alabama and elsewhere; **(b)** Cigna, a private plan providing drug insurance coverage in Alabama and elsewhere; **(c)** Medicare, a federally funded plan that provides free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled, and Part D of which subsidizes the costs of certain prescription drugs; **(d)** TRICARE, a health care program of the United States Department of Defense ("DOD") Military Health System that provides drug insurance coverage for DOD beneficiaries worldwide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors; and **(e)** The Civilian Health and Medical Program of the Department of Veterans Affairs ("CHAMPVA"), a health care program administered by the Veterans Health Administration Office of Community Care that provides health care coverage to the spouses, widow(er)s, and children of veterans who are permanently and totally disabled due to a service-connected disability, or died of a service-connected disability, or died on active duty and the dependents are not otherwise eligible for TRICARE benefits.

15.     BCBSAL, Cigna, Medicare, TRICARE, CHAMPVA, and other health insurance plans are "health care benefit programs" as that term is defined by Title

18, United States Code, Section 24(b), and used in Title 18, United States Code, Section 1347.

16.    Pharmacy Benefit Managers ("PBMs") and Pharmacy Services Administrative Organizations ("PSAOs") are third-party administrators of health insurance prescription drug plans, and act on their behalf.  A PBM typically contracts directly with a health insurance plan to provide billing, auditing, and other services. A PSAO typically contracts with a PBM such that PSAO member pharmacies may participate in a PBM network, *i.e.*, are eligible to bill the health insurance plans with which the PBM contracts.

17.    When dispensing drugs, pharmacies bill beneficiaries' health insurance plans such as BCBSAL, Cigna, Medicare, TRICARE, and CHAMPVA, typically through these entities' third-party administrators.

18.    A pharmacy could become eligible to bill a health insurance plan by joining a PBM's pharmacy network through an agreement with a PBM or PSAO.  If a pharmacy joins a PBM network through an agreement with a PSAO, it agrees to be bound by the terms of the agreement between the PSAO and the PBM.

19.    PBMs include the following: **(a)** Prime Therapeutics ("Prime"), a PBM for BCBSAL and other health care benefit programs; **(b)** CVS/Caremark, a PBM for Medicare and other health care benefit programs; **(c)** Express Scripts Inc. ("ESI"), a

6

PBM for TRICARE and other health care benefit programs; and **(d)** Optum Rx, a PBM for CHAMPVA, Cigna, and other health care benefit programs.   Prime, CVS/Caremark, ESI, MedImpact, and Optum Rx are "health care benefit programs," as defined by Title 18, United States Code, Section 24(b), and as that term is used in Title 18, United States Code, Section 1347.   Prime, CVS/Caremark, ESI, MedImpact, and Optum Rx are collectively hereafter referred to as the **VICTIM PBMs**.

20.   To become a network pharmacy, a pharmacy agrees that when submitting claims for prescriptions, it will comply with all applicable State and Federal laws, specifically including those addressing fraud, waste, and abuse; and will comply with the PBMs' rules and regulations.   The rules and regulations that are material to the PBMs' decision to pay for claims submitted by a pharmacy include prohibitions against submitting claims for invalid and medically unnecessary prescriptions, submitting claims in a way that bypasses PBM billing safeguards, paying kickbacks, and routinely waiving and discounting patient co-pays.   PBMs require pharmacies to collect co-pays, typically a fixed amount, from patients, in part so that the patient is financially motivated to decline medically unnecessary or otherwise fraudulent prescriptions.

## Count 1

[Conspiracy to Pay and Receive Kickbacks: 18 U.S.C. § 371 (42 U.S.C. § 1320a-7b(b)(1))]

21.    Paragraphs 1 to 20 of the Introduction of this Indictment are fully incorporated as though set forth herein.

### THE CONSPIRACY

22.    Beginning at least in or about December 2014 and continuing until at least in or about February 2016, the exact dates being unknown, within Winston County in the Northern District of Alabama, and elsewhere, defendant **MICHELLE MARTINE JACKSON,** knowingly and willfully conspired, combined, and agreed with Bonita Amonett and Brandy Lunsford and others known and unknown to the Grand Jury:

a.    to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks, cash, and bribes, directly and indirectly, overtly and covertly, in return for: referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by a federal health care program, that is, **Medicare, TRICARE, and CHAMPVA**; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by a federal health care program, that is, **Medicare, TRICARE, and CHAMPVA**; and

b.    to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks, cash, and bribes, directly and indirectly, overtly and covertly to a person to induce the person to: refer individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by a federal

8

health care program, that is, **Medicare, TRICARE, and CHAMPVA**; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by a federal health care program, that is, **Medicare, TRICARE, and CHAMPVA**.

## PURPOSE OF THE CONSPIRACY

23.     It was a purpose of the conspiracy for defendant **MICHELLE MARTINE JACKSON**, and other co-conspirators, such as Bonita Amonett and Brandy Lunsford, and others known and unknown to the Grand Jury to unlawfully enrich themselves and others by offering and soliciting and paying and receiving kickbacks and bribes in exchange for the referral of **Medicare, TRICARE, and CHAMPVA** beneficiaries for whom Global and Global affiliated pharmacies submitted claims to **Medicare, TRICARE, and CHAMPVA**.

## MANNER AND MEANS OF THE CONSPIRACY

24.     It was a part of the conspiracy that Bonita Amonett made cash payments to Defendant **JACKSON** and Brandy Lunsford to induce them to write prescriptions, including prescriptions for Medicare, TRICARE, and CHAMPVA beneficiaries, to be filled by Global and Global affiliated pharmacies.

25.     It was a further part of the conspiracy that Bonita Amonett made indirect payments to Defendant **JACKSON** by working without pay at Defendant **JACKSON's** weight-loss clinic to induce her to write prescriptions, including

prescriptions for Medicare, TRICARE, and CHAMPVA beneficiaries, to be filled by Global and Global affiliated pharmacies. .

26.    It was a further part of the conspiracy that based on these direct and indirect payments, Defendant **JACKSON** wrote prescriptions for Medicare, TRICARE, and CHAMPVA beneficiaries to be filled by Global and Global affiliated pharmacies.

## OVERT ACTS

27.    In furtherance of the conspiracy and to achieve the objects thereof, defendant **MICHELLE MARTINE JACKSON**, and other co-conspirators, such as Bonita Amonett and Brandy Lunsford, and others known and unknown to the Grand Jury, committed and caused to be committed the following acts in furtherance of the conspiracy, among others, in the Northern District of Alabama and elsewhere:

28.    On or about August, 31, 2015, Defendant **JACKSON** issued a prescription for S.P., a CHAMPVA beneficiary, for metabolic supplements.

29.    On or about December 4, 2015, Bonita Amonett received an approximately $17,000 payment, which included her commission, from Global as a direct deposit to her personal bank account.

30.    On or about December 4, 2015, Bonita Amonett made a $7,000 cash withdrawal from her personal bank account.

31.     On or about December 4, 2015, Bonita Amonett delivered that cash to

Defendant **JACKSON** as a payment for the Global prescriptions the prescriber had

written.

All in violation of Title 18, United States Code, Section 371.

## Count 2
[Conspiracy: 18 U.S.C. § 1349 (18 U.S.C. §§ 1341, 1347)]

32.     Paragraphs 1 to 20 of the Introduction of this Indictment are fully

incorporated as though set forth herein.

## THE CONSPIRACY

33.     Beginning at least in or about December 2014 and continuing until at

least in or about February 2016, the exact dates being unknown, within Winston

County in the Northern District of Alabama, and elsewhere, defendant **MICHELLE**

**MARTINE JACKSON,** knowingly and willfully conspired, combined, and agreed

with Bonita Amonett and Brandy Lunsford and others known and unknown to the

Grand Jury:

a.     to execute and attempt to execute a scheme and artifice to defraud
health care benefit programs affecting commerce, as defined in Title 18, United
States Code, Section 24(b), that is, **Prime, CVS/Caremark, ESI, MedImpact, and
Optum Rx (the VICTIM PBMs)**, and others, and to obtain, by means of materially
false and fraudulent pretenses, representations, and promises, money and property
owned by, and under the custody and control of said health care benefit programs,
in connection with the delivery and payment for health care benefits, items and
services, in violation of Title 18, United States Code, Section 1347; and

b.      to devise and intend to devise a scheme and artifice to defraud **Prime, CVS/Caremark, ESI, MedImpact, and Optum Rx** (**the VICTIM PBMs**), and others, and to obtain money and property belonging to Prime, CVS/Caremark, ESI, MedImpact, and Optum Rx, and others, by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice and attempting to do so, to place in any post office and authorized depository for mail matter, a matter and thing to be sent and delivered by the United States Postal Service, and to deposit and cause to be deposited a matter and thing to be sent and delivered by private and commercial interstate carriers, including UPS, in violation of Title 18 United States Code, Section 1341.

## PURPOSE OF THE CONSPIRACY

34.    It was a purpose of the conspiracy for defendant **MICHELLE MARTINE JACKSON**, and other co-conspirators, such as Bonita Amonett and Brandy Lunsford, and others known and unknown to the Grand Jury to unlawfully enrich themselves and others by, among other things: **(a)** generating prescriptions to be filled by Global and its Global affiliated pharmacies using false and fraudulent means; and **(b)** submitting and causing the submission of prescription claims to the **VICTIM PBMs** based upon materially false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS OF THE CONSPIRACY

35.    It was a part of the conspiracy that Bonita Amonett made direct cash and other payments to Defendant **JACKSON** and Brandy Lunsford to induce them to write prescriptions to be filled by Global and Global affiliated pharmacies.

36.   It was a further part of the conspiracy that Bonita Amonett made indirect payments to Defendant **JACKSON** to induce her to write prescriptions to be filled by Global and Global affiliated pharmacies.  This included Bonita Amonett working without pay at Defendant **JACKSON's** weight-loss clinic.

37.   It was a further part of the conspiracy that so incentivized to issue prescriptions, Defendant **JACKSON** issued prescriptions for drugs that were not medically necessary, including for multiple medically unnecessary refills.   The prescriptions Defendant **JACKSON** issued included prescriptions for: Bonita Amonett and her family and friends; individuals with whom Defendant **JACKSON** did not have a doctor-patient relationship; and individuals who were patients of Defendant **JACKSON** but had no medical need for the items prescribed including family members of Defendant **JACKSON's** staff.

38.   It was a further part of the conspiracy that Bonita Amonett provided Defendant **JACKSON** with preprinted prescription forms that listed multiple purportedly personalized compounded drugs and manufactured drugs.

39.   It was a further part of the conspiracy that Defendant **JACKSON** pre-signed blank Global prescription forms.  In doing so, she enabled co-conspirators to issue prescriptions under her name simply by checking boxes on the prescription form.

13

40.    It was a further part of the conspiracy that members of Global's management instructed Global employees, including Bonita Amonett, to obtain high-reimbursing but medically unnecessary prescriptions for themselves, family members, friends, and patients, and paid them a commission for each prescription they obtained that Global successfully billed.   These "directed prescriptions" included: various manufactured drugs including: *(i)* Silapak (also known as PharmaPak), and advertised as treating various skin conditions; *(ii)* Active Prep Kit II, advertised as treating mild to moderate pain, muscle spasms, and tenderness; and *(iii)* Lidocin, advertised as treating inflammation and pain.   Global's marketing materials stated that Silapak was contraindicated for children and pregnant women.

41.    It was a further part of the conspiracy that to generate prescriptions, Defendant **JACKSON** wrote prescriptions for high-reimbursing but medically unnecessary prescriptions, including for Bonita Amonett and her family members, for other individuals who Defendant **JACKSON** never saw as patients, and for individuals who were patients of Defendant **JACKSON** but had no medical need for the items prescribed including family members of Defendant **JACKSON's** staff.

42.    It was a further part of the conspiracy that Global paid Bonita Amonett a commission for each prescription she obtained that Global successfully billed.  .

14

43.     It was a further part of the conspiracy that to maximize the revenue and commissions on prescriptions, Defendant **JACKSON** authorized Global and its Affiliate Pharmacies to automatically refill prescriptions regardless of whether patients needed or requested refills.  This and other fraudulent practices frequently resulted in beneficiaries simply discarding in the trash the unnecessary drugs they received.

44.     It was a further part of the conspiracy that to incentivize beneficiaries to obtain and retain Global's medically unnecessary drugs, co-conspirators routinely waived beneficiaries' co-pays.  This included by Defendant **JACKSON** telling beneficiaries that there would be no co-pay or out of pocket cost to them.

45.     It was a further part of the conspiracy that in reliance on those and other false and fraudulent pretenses and representations, Global and Global affiliated pharmacies were paid by insurers/PBMs over $3 million for prescriptions issued by Defendant **JACKSON**.

46.     It was a further part of the conspiracy that the Defendant **JACKSON** and other co-conspirators caused Global and Global affiliated pharmacies to ship drugs and other items from pharmacy locations to beneficiaries using the United States Postal Service ("USPS") and private and commercial interstate carriers such as United Parcel Service ("UPS").

## ACTS IN FURTHERANCE

47.    In furtherance of the conspiracy and to achieve the objects thereof, defendant **MICHELLE MARTINE JACKSON**, Bonita Amonett, Brandy Lunsford, and others known and unknown to the Grand Jury, committed and caused to be committed the following acts in furtherance of the conspiracy, among others, in the Northern District of Alabama and elsewhere:

48.    On or about August 10, 2015, Defendant **JACKSON** issued medically unnecessary prescriptions for patient B.E., a family member of Bonita Amonett, for Silapak, Lidocin, and Active Prep Kit.   Defendant **JACKSON** prescribed the Silapak, which was contraindicated for pregnant women, even though Defendant **JACKSON** was aware B.E. was pregnant.

49.    On or about August 18, 2015, Defendant **JACKSON** issued identical medically unnecessary prescriptions for Bonita Amonett and two of her children, G.A. and M.D., for Silapak, Medi-Derm, and Lidocin.

50.    On or about August 19, 2015, Global mailed prescriptions to G.A. from its Haleyville, Alabama, location to Bonita Amonett's home address by UPS.

51.    On or about August 19, 2015, Global mailed prescriptions to M.D. from its Haleyville, Alabama, location to Bonita Amonett's home address by UPS.

52.     On or about August 26, 2015, Defendant **JACKSON** issued medically unnecessary prescriptions for K.H., a friend of Bonita Amonett, for Medi-Derm and Lidocin.

53.     On October 27, 2015, Defendant **JACKSON** issued medically unnecessary prescriptions for B.D. for two separate pain sprays and a pain patch.

54.     On or about January 15, 2016, Defendant **JACKSON** issued identical prescriptions for over 80 separate patients for: (1) Diclofenac Sodium Gel; (2) Lidocaine USP Ointment; and (3) a compound for muscular pain.

55.     On or about January 15, 2016, Defendant **JACKSON** issued three medically unnecessary prescriptions for S.M. for: (1) Diclofenac Sodium Gel; (2) Lidocaine USP Ointment; and (3) a compound for muscular pain.

All in violation of Title 18, United States Code, Section 1349.

### **Counts 3 through 9**
[Health Care Fraud: 18 U.S.C. § 1347]

56.     Paragraphs 1 to 20 of the Introduction of this Indictment are fully incorporated as though set forth herein.

57.     Beginning at least in or about December 2014 and continuing until at least in or about February 2016, within Winston County in the Northern District of Alabama, and elsewhere, the defendant **MICHELLE MARTINE JACKSON** did knowingly and willfully execute and attempt to execute a scheme and artifice to

defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, **Prime, CVS/Caremark, ESI, MedImpact, and Optum Rx (the VICTIM PBMs)**, and others, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of these and other health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

## PURPOSE OF THE SCHEME AND ARTIFICE

58. Paragraph 34 of this Indictment is realleged and incorporated by reference as though fully set forth herein as the description of the purpose of the health care fraud scheme and artifice.

## THE SCHEME AND ARTIFICE

59. Paragraph 35 of this Indictment is hereby incorporated by reference as though fully set forth herein, with the words "It was a part of the scheme and artifice" replacing "It was a part of the conspiracy" at the beginning of the paragraph. Paragraphs 36 to 46 are hereby incorporated by reference as though fully set forth herein, with the words, "It was a further part of the scheme and artifice" replacing "It was a further part of the conspiracy" at the start of each paragraph.

## ACTS IN EXECUTION OF THE SCHEME AND ARTIFICE

60.     On or about the dates set forth below for each Count listed in the table below, each such date constituting a separate count of this Indictment, in Winston County within the Northern District of Alabama, and elsewhere, defendant **MICHELLE MARTINE JACKSON**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute and attempt to execute the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, the **VICTIM PBMs**, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises (including that the prescriptions were medically necessary), money and property owned by, and under the custody and control of, said **VICTIM PBMs**.

61.     The allegations of paragraphs 57 to 60 above are realleged for each of Counts 2 through 10 below, as though fully set forth therein, when, on or about the dates set forth below in the table below, defendant **MICHELLE MARTINE JACKSON** did cause the submission of prescription payment claims through Global and Global affiliated pharmacies to the **VICTIM PBMs**, and cause the payment of these prescription claims by the **VICTIM PBMs** (with the health insurance plan listed in a parenthetical) of the following prescription drugs:

| Count | RX # | Drug | Patient | Healthcare Benefit Program | Approx. Date Submitted | Approx. Amount Submitted | Approx. Amount Paid |
|---|---|---|---|---|---|---|---|
| 3 | 6266133 | Silapak | Bonita Amonett | Prime (BCBSAL) | August 18, 2015 | $5,184 | $4,403 |
| 4 | 6266140 | Silapak | G.A. | Prime (BCBSAL) | August 18, 2015 | $5,184 | $4,343 |
| 5 | 6266117 | Silapak | M.D. | Prime (BCBSAL) | August 18, 2015 | $5,184 | $4,343 |
| 6 | 6268493 | Medi-Derm | K.H. | Prime (BCBSAL) | August 26, 2015 | $802 | $555 |
| 7 | 6268494 | Lidocin Gel | K.H. | Prime (BCBSAL) | August 26, 2015 | $2431 | $1,941 |
| 8 | N/A (Attempt) | Pain Spray | B.D. | Prime (BCBSAL) | October 27, 2015 | N/A (Attempt) | N/A (Attempt) |
| 9 | 110561 | Lidocaine | S.M. | PBM (Cigna Health Spring) | January 19, 2016 | $3,124 | $997 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

### **Counts 10 through 11**
[Aggravated Identity Theft: 18 U.S.C. §§ 1028A(a)(1), 2]

62.     Paragraphs 1 to 20 of the Introduction to this Indictment are fully incorporated as though set forth herein.

63.     On or about the date set forth below for each Count listed in the table below, each such date constituting a separate count of this Indictment, within Winston County in the Northern District of Alabama, and elsewhere, defendant **MICHELLE MARTINE JACKSON** knowingly transferred and possessed and used, without lawful authority; and aided, abetted, counseled, commanded, induced,

20

and procured and willfully caused the commission of the knowing transfer and possession and use, without lawful authority of; the means of identification listed in the table below of other actual persons, more specifically identified below for each actual person, knowing that each means of identification was that of an actual person, during and in relation to committing health care fraud as charged in Counts Eight and Nine of this Indictment.

| Count | Means of Identification | Drug | Rx. # | Approx. Prescription Date | Approx. Amount Paid |
|-------|------------------------|------|-------|--------------------------|---------------------|
| 10 | Name: B.D. D.O.B.: ████ 1984 | Pain Spray | N/A (Attempt) | October 27, 2015 | N/A (Attempt) |
| 11 | Name: S.M. D.O.B.: ████ 1970/ | Lidocaine | 110561 | January 15, 2016 | $997 |

All in violation of Title 18, United States Code, Sections 1028A, 1028(d)(7), and 2.

## NOTICE OF FORFEITURE

1.    The allegations in COUNT ONE through COUNT NINE of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

2.    Upon conviction of the offenses set forth in COUNT ONE through COUNT NINE of this Indictment, the defendant

**MICHELLE MARTINE JACKSON,**

21

shall forfeit to the United States of America,

> pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the health care fraud offenses charged in Counts ONE through NINE of this indictment.

3.     The property to be forfeited includes but is not limited to a forfeiture money judgment.

4.     If any of the property described above, as a result of any act or omission of the defendant:

> a.  cannot be located upon the exercise of due diligence;
>
> b.  has been transferred or sold to, or deposited with, a third party;
>
> c.  has been placed beyond the jurisdiction of the court;
>
> d.  has been substantially diminished in value; or
>
> e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 982(a)(7).

A TRUE BILL.


*/s/ Electronic Signature*
FOREPERSON OF THE GRAND JURY

PRIM F. ESCALONA
United States Attorney


*/s/ Electronic Signature*
DON B. LONG
Assistant United States Attorney


*/s/ Electronic Signature*
EDWARD J. CANTER
Assistant United States Attorney

23